UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| WILLIAM YORK,<br><br>    Plaintiff,<br>v.<br><br>PATEL EDUCATIONAL SERVICES INC, d/b/a PREP EXPERT, f/k/a 2400 EXPERT,<br><br>    Defendant. | **COMPLAINT**<br><br>Civil Action No. 5:21-cv-380<br>Jury Trial Demanded |

NOW COMES Plaintiff, William York, by and through undersigned counsel, and complains against Defendant Patel Educational Services, Inc. d/b/a Prep Expert, f/k/a 2400 Expert as follows:

**INTRODUCTION AND NATURE OF THE CASE**

Plaintiff brings this action against Defendant for violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. Plaintiff seeks all available damages, as well as all available equitable relief pursuant to 29 U.S.C. § 626(b) and as otherwise authorized pursuant to law.

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff William York, PhD ("Plaintiff" or "Dr. York"), is a citizen and resident of Wake County, North Carolina. Dr. York, a 45-year-old male, was employed by Defendant from February 10, 2016, until Defendant terminated his employment on September 8, 2020. At all times relevant hereto, Dr. York constituted an "employee" pursuant to the ADEA.

2.    Defendant Patel Education Services, Inc. ("Defendant" or the "Company") is a foreign corporation organized and existing under the laws of the State of Delaware with its principal office located at 9801 Winter Palace Drive, Las Vegas, Nevada 89145. Patel Educational

Services, Inc. maintained a registered office in North Carolina from November 23, 2016, through July 12, 2017.

3. Defendant presently operates its business under the assumed business name of "Prep Expert." During Plaintiff's period of employment, Defendant also operated under the name "2400 Expert."

4. At all times relevant hereto, Defendant has been an employer within the meaning of the ADEA. Defendant has continuously engaged in an industry affecting commerce and employed twenty (20) or more employees pursuant to 29 U.S.C. § 630(b).

5. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims asserted herein involve federal questions regarding the deprivation of Dr. York's federally protected rights arising under the ADEA.

6. This Court has personal jurisdiction over Defendant because Dr. York's claims arise from Defendant's substantial activity in and sufficient minimum contacts with the State of North Carolina (the "State"), including but not limited to:

   a. hiring employees, like Dr. York, who are North Carolina residents;

   b. transacting business in the State by and through its North Carolina employees who carry out the objectives of Defendant's enterprise from within this State;

   c. transacting business in the State by and through its renting of office space in North Carolina for the purpose of instructing residents of the State;

   d. establishing continuing contacts in North Carolina through its regular communication with North Carolina employees, like Dr. York, via telephone calls, emails, and/or electronic telecommunications to discuss and further Defendant's business; and

     e. unlawfully discriminating against Dr. York, the effects of which are wholly suffered by him within the State.

7. Defendant has engaged in substantial activity within the State, and otherwise has established and maintained sufficient continuous contacts within the State in order to carry out its business objectives, and in doing so it discriminated against Dr. York, causing him injury within the State. Defendant's activities in North Carolina satisfy both North Carolina's Long Arm Statute and the minimum requirements of the Due Process Clause of the United States Constitution.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this Court has personal jurisdiction over Defendant and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Dr. York signed and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 3, 2021, alleging violations of the ADEA.

10. The EEOC issued Plaintiff a Notice of Right to Sue on June 23, 2021.

11. Plaintiff complied with all deadlines related to the investigation of his formal administrative complaint.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

13. Defendant specializes in providing test preparation services to prospective SAT and ACT test-takers all over the United States. Defendant holds itself out as a leader in the test preparation community and "is so confident" in its test preparation methods that the Company provides the "industry's leading money-back score improvement guarantee."

14. The Company advertises that its courses are taught by instructors who have "a perfect score or [have] scored in the Top 1% on the test that they teach." Additionally, for each course offered, Defendant's website includes a biography and photograph of the assigned instructor.

15. Defendant only hires instructors who possess the requisite specialized knowledge and education skills, including but was not limited to, a high degree of exam-taking competency and an ability to teach Defendant's set curriculum.

16. Preparing students to take standardized exams–particularly the SAT and ACT–is an integral part of Defendant's business and is the Company's principal revenue stream.

17. On February 10, 2016, Defendant hired Dr. York as an instructor. Dr. York obtained his undergraduate degree from the University of North Carolina at Chapel Hill, and also earned a master's degree and a PhD from Indiana University. As advertised by Defendant, Dr. York scored in the top 1% of both SAT and ACT test-takers.

18. When Dr. York was hired, many of Defendant's instructors were forty years old or older.

19. As an instructor employed by Defendant, Dr. York taught standardized test preparation courses to groups, both online and in-person in Raleigh, North Carolina. Dr. York also provided one-on-one tutoring services for students, as assigned by Defendant.

20. Defendant required Dr. York to teach courses in accordance with a specific curriculum. Defendant provided Dr. York with assigned lesson plans, slides, course due dates, and other materials he was required to use when teaching courses on behalf of the Company. Periodically, Defendant would provide Dr. York with feedback regarding his performance as an

instructor. Dr. York was subject to discipline by Defendant if he failed complete course assignments as directed.

21. From April 2016 to approximately August 2018, Dr. York taught in-person classes in Raleigh, North Carolina. In 2016, Defendant rented office space located at 555 Fayetteville Street, Suite 201, Raleigh, NC 27601 and required Dr. York to teach classes and perform other employment duties from this location.

22. In 2018, Dr. York taught in-person classes in Cary, North Carolina. Defendant rented office space at the Cary Innovation Center, located at 201 West Chatham Street, Cary, NC 27511. Defendant required Dr. York to teach an in-person class from the Cary location.

23. When teaching, Defendant requires its instructors, including Dr. York, to dress in professional attire. Further, when teaching online courses, Defendant requires its instructors to actively monitor sound quality, lighting, and camera angle.

24. Tutoring assignments were provided to Dr. York electronically. Once Defendant notified Dr. York of an assignment, he was required to reach out to the potential student within forty-eight (48) hours with the goal of bringing the potential student "through to service." For all students in a tutoring session, Dr. York was required to create a folder that contained the student's name, phone numbers, notes from all tutoring sessions and copies of session reports.

25. If Dr. York needed a substitute teacher, he was required to contact Company management for approval; instructors were not permitted to arrange for substitutes between themselves. Requests for substitute teachers had to be submitted no less than two (2) weeks in advance of the date on which the substitute was requested.

26. Dr. York was paid $50 per hour for class instruction and one-on-one tutoring. Additionally, Defendant paid Dr. York $15 per hour for time spent arriving prior to scheduled

5

Case 5:21-cv-00380-M   Document 1   Filed 09/21/21   Page 5 of 13

classes and/or tutoring sessions, as well as $15 per hour for staying after class and/or tutoring sessions to answers questions or upload course materials.

27. Defendant also provided Dr. York a Company email address for use in communicating with course participants.

28. In addition to setting the course curriculum, Defendant created Dr. York's class schedule and handled students' payments for the courses he taught. Once Defendant set his class schedule, Dr. York had no discretion regarding how long or how frequently he worked.

29. Dr. York was regularly and consistently employed by Defendant as described herein for nearly five years prior to his termination.

30. During the nearly five (5) years Dr. York worked for the Company, Defendant regularly praised him for his performance and even mentioned him, by name, in its marketing materials as an example of the high-quality instruction provided by the Company. Dr. York repeatedly received positive feedback from both Defendant and former students.

31. In his 2019 performance review, just a few months before he was terminated, Defendant noted that Dr. York's "subject matter knowledge is excellent, off the charts," and that his "overall performance is excellent, consistently among our best." Defendant told Dr. York that he was free to use his judgment in teaching because "we trust you to handle class however you want." The 2019 performance review also stated, among other praises, that:

    a. Dr. York received "[g]reat reviews and refund numbers;"

    b. Dr. York has "taught very well for us for a long time;"

    c. Dr. York did a "[g]reat job with maintaining pace" of the class;

    d. Dr. York provided "consistent, professional presentation[s];"

    e. Dr. York did an "awesome" job walking through examples; and

  f. Dr. York was "an excellent instructor, calm and capable and assured."

32. The only criticisms that Dr. York received from his 2019 performance review were regarding his "energy level" and the visual presentation of his online classes. He was instructed to center his head, zoom out a bit, and to use more flattering lighting.

33. In early 2020, Dr. York signed up for and was assigned to teach an Advanced SAT course during the Summer 2020 session. Classes for this course were scheduled four days per week for six-weeks.

34. In or around April 2020, Dr. York discovered that the Advanced SAT he was scheduled to teach was not being advertised on Defendant's website. During the next two (2) months, Dr. York sent numerous emails to Defendant inquiring as to the status of the course, which was set to begin on July 11, 2020.

35. On June 29, 2020, Defendant notified Dr. York that the six-week Advanced SAT class had been cancelled. Defendant's only explanation for the cancellation was that "a change occurred that is outside of our control."

36. On August 28, 2020, Dr. York contacted Defendant regarding the classes he was available to teach during the Fall 2020 semester. He received no response.

37. On September 4, 2020, Dr. York again contacted Defendant regarding his teaching assignments for Fall 2020. Again, Dr. York received no response.

38. On or around September 8, 2020, Dr. York noticed that two of the classes he had requested to teach were assigned to younger instructors. Again, Dr. York emailed Defendant and provided an updated list of classes he was available to teach. Within a matter of hours, Defendant's Senior Director responded to Dr. York's email and stated, "[a]t this time, we do not have plans to use you for further course instruction or tutoring work."

39. On September 19, 2020, Defendant's CEO, Shaan Patel, sent Dr. York an email and stated that in making decisions regarding adding and removing instructors, the Company considers "their fee structure, their skill, their knowledge base, and overall fit for our business needs."

40. When Defendant terminated Dr. York on September 8, 2020, he—at forty-four years old—was Defendant's oldest employee. Further, upon information belief, at the time Defendant terminated Dr. York, no other instructor had earned a master's degree or a PhD. After terminating Dr. York, Defendant's roster of course instructors included almost exclusively college students and recent college graduates in their early-to-mid-twenties.

41. As set forth herein, Defendant consciously and intentionally discriminated against Dr. York because of age (44) by treating him differently than similarly situated, younger instructions. Defendant terminated Dr. York and replaced him by hiring and/or assigning the younger and less qualified instructors to teach courses, in violation of the ADEA.

42. As a direct and proximate result of Defendant's unlawful discrimination, Dr. York suffered and continues to suffer damages. Defendant is liable to Dr. York for all damages and remedies available to him under the law, including but not limited to lost wages, liquidated damages, costs and attorneys' fees.

## CLAIM FOR RELIEF
**Age Discrimination in Violation of the ADEA, 29 U.S.C. § 621 *et seq.***

43. Plaintiff reiterates and realleges each and every paragraph above and incorporates each as if set forth fully herein.

44. At all times relevant, Dr. York constituted an "employee" within the meaning of the ADEA.

45. At all times relevant, Defendant constituted an "employer" within the meaning of the ADEA.

46. Defendant controlled the time, place, subject matter, and manner in which Dr. York taught his courses, such that he was acting solely as Defendant's employee for purposes of the ADEA. Defendant's control over Dr. York's work included, but was not limited to:

   a. renting and/or leasing office space from which Dr. York was required to teach in-person classes;

   b. creating all class schedules;

   c. regulating the number of students who could enroll in the classes he taught;

   d. requiring Dr. York to teach only a specific curriculum, as assigned by lesson plans, slides, course due dates, and other materials provided by Defendant;

   e. requiring Dr. York to request substitute instructors through, and subject to the approval of, Defendant;

   f. reimbursing Dr. York for purchasing certain materials for use in the classes he taught;

   g. regulating the lighting, sound, and background conditions of online classes;

   h. conducting formal performance reviews; and

   i. maintaining the authority to discipline Dr. York should he not teach his classes in accordance with Defendant's strict guidelines.

47. At all times relevant to this Complaint, Dr. York was forty years old or older, and therefore meets threshold age requirement of the ADEA.

48. Dr. York was more than qualified to work as an instructor for Defendant. He has an undergraduate degree from the University of North Carolina, as well as a masters and a PhD from Indiana University. Dr. York also recorded SAT and ACT scores in the top 1% of all test takers.

49. Defendant knew and acknowledged that Dr. York was a proficient SAT and ACT instructor. In his 2019 performance review, Defendant indicated that Dr. York's knowledge of the relevant subject matter was "off the chart" and described his teaching style as "consistent, reliable, [and] professional."

50. Additionally, Defendant marketed its services to the general public by referencing reviews from Dr. York's former students. Defendant's website included quotes such as, "Will York was my instructor, and he could not have done a better job." Another review read "My teacher was Will York. He was very thorough and was on top of things when questions were asked…. I believe this course will help me succeed on my ACT coming up."

51. During his tenure with Defendant, Dr. York performed his job above Defendant's legitimate expectations. He consistently received glowing reviews from students and Defendant alike. In the months leading up to his termination, Defendant noted that Dr. York's "overall performance is excellent, [and] consistently among our best" and that he is "an excellent instructor, calm and capable and assured."

52. Though Plaintiff was highly qualified and performed his duties as an instructor above and beyond Defendant's expectations, he nevertheless suffered an adverse employment action when Defendant terminated him on September 8, 2020.

53. Defendant treated Dr. York less favorably than the younger instructors, solely because of his age. Upon information and belief, at and around the time Defendant terminated Dr. York, it continued to hire younger and less qualified instructors and/or assign only its younger and less qualified instructors to teach its courses, thereby effectively replacing Dr. York. At the time he was terminated, Dr. York was Defendant's oldest instructor. After his termination, Defendant's

instructors included recent college graduates, currently enrolled undergraduate students, and even high school students. Upon information and belief, all instructors were under the age of forty.

54. Defendant told Dr. York it determined not to "use him" in future based in his fee structure, skill, knowledge base, and "overall fit for our business needs." However, if Defendant had actually considered these factors, Dr. York should still be employed by Defendant. Only a few months before his termination, Defendant praised Dr. York for his "excellent" subject matter knowledge and told him he was consistently among its best instructors. Additionally, Dr. York was necessarily meeting Defendant's "business needs" by providing, admittedly, excellent test preparation services to its clients. Lastly, Dr. York was paid based on the same hourly fee structure for which he had been paid for nearly five (5) years. Dr. York had not been disciplined, nor, upon information and belief, had he received negative feedback from his students.

55. In terminating Dr. York, Defendant engaged in unlawful employment practices in violation of the ADEA. Specifically, Defendant, through its managerial staff, discriminated against Dr. York by terminating him, providing him only illusory reasons for his termination, and replacing him by hiring and/or assigning substantially younger and less qualified instructors to teach its courses.

56. By terminating Dr. York and replacing him by hiring and/or assigning substantially younger and less qualified employees to teach its courses, Defendant, through its managerial staff, acted intentionally, consciously and with reckless indifference to Dr. York's federally protected right to be free from age discrimination. Defendant intentionally phased out its older instructors until only Dr. York remained. Though Defendant acknowledged that Dr. York was an excellent instructor, his age cost him his job.

57. Defendant's conduct, by and through its managers, deprived Dr. York of equal employment because of his age.

58. It was reasonably foreseeable that, as a result of this unlawful termination, Dr. York would incur damages, including but not limited to lost wages.

59. As a direct and proximate result of Defendant's violation of the ADEA as described herein, Dr. York has suffered, and continues to suffer, monetary damages including, but not limited to, loss of past and future income for which Dr. York is entitled to an award of damages, attorney's fees, and costs.

60. Further, the foregoing conduct constitutes a willful violation of the ADEA within the meaning of 29 U.S.C. § 626(b) and, as a result, Dr. York is entitled to liquidated damages.

## JURY DEMAND

Plaintiff demands a trial by jury of the claims asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays the Court for judgment against Defendant to the full extent permitted by 29 U.S. C. § 626(b), including but not limited to the following:

1. Judgment in Plaintiff's favor, determining that Defendant's actions and conduct towards and relating to Plaintiff violated the ADEA;

2. Award Plaintiff all monetary damages incurred, including but not limited to back pay, front pay, and interest;

3. Award Plaintiff liquidated damages as a result of Defendant's willful violation of the ADEA in an amount to be determined at trial;

4. Award Plaintiff the costs, disbursements, expenses, reasonable attorneys' fees, and expert witnesses' fees incurred by Plaintiff in filing and prosecuting this action;

5. For an award of pre- and post-judgment interest to Plaintiff on all damages; and

6. For all other, future relief as this Court deems just and appropriate.

This the 21st day of September, 2021.

Respectfully submitted,

/s/Lindsey A. Bullard
Stanley B. Green, N.C. Bar No. 25539
Dawn T. Mistretta, N.C. Bar No. 31691
Lindsey A. Bullard, N.C. Bar No. 46664
GREEN MISTRETTA LAW, PLLC
1752 Heritage Center Drive, Suite 101
Wake Forest, NC 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
sgreen@gmlawyers.org
dmistretta@gmlawyers.org
lbullard@gmlawyers.org
*Counsel for Plaintiff*